UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ROBERT STOLARIK,                                )    Civil Action No. 15-5858

                 Plaintiff,                    )    **FIRST AMENDED COMPLAINT**

     -against-                              )
                                           )    **JURY TRIAL DEMANDED**
                                           )
THE CITY OF NEW YORK, NYPD POLICE
OFFICER MICHAEL ACKERMANN,              )
NYPD POLICE OFFICER REBECCA GUZMAN,
LIEUTENANT WILBERT MORALES,
LIEUTENANT EUGENE WHYTE, and
NYPD ASSISTANT CHIEF KIM ROYSTER,    )

                 Defendants.                  )    ECF Case
-----------------------------------------------------------------x

      Plaintiff ROBERT STOLARIK, by his attorneys, the Law Office of Ronald L. Kuby, hereby brings this action under 42 U.S.C. §1983 to redress his civil and legal rights, and alleges as follows:

**PRELIMINARY STATEMENT**

      1.      This is a civil rights action in which the Plaintiff, ROBERT STOLARIK, seeks relief for the Defendants' violations of his rights secured by 42 U.S.C. §1983 and by the United States Constitution, including its Fourth and Fourteenth Amendments, for his wrongful arrest and malicious prosecution. Plaintiff, an accomplished photojournalist, was simply doing his job when an NYPD police officer ordered Plaintiff to stop taking photographs, and when he did not, Plaintiff was arrested without probable cause. The arresting officer then falsified official records in order to justify Plaintiff's wrongful arrest. Plaintiff seeks compensatory and punitive damages, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems just and proper.

**JURISDICTION AND VENUE**

2.     This action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1343, this being an action seeking redress for the violation of the Plaintiff's constitutional and civil rights.

3.     Venue in this District is also proper under 28 U.S.C. §1391(b) and (c) in that Defendant CITY OF NEW YORK is administratively located within the Southern District of New York, and the events giving rise to this claim occurred within the boundaries of the Southern District of New York.

4.     As mandated by the Supremacy Clause, in relation to actions brought pursuant to 42 U.S.C. §1983, Plaintiff is not required to comply with N.Y. Gen. Mun. L. sec. 50-h with regard to filing a Notice of Claim.

**JURY TRIAL DEMANDED**

5.     Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

**PARTIES**

6.     At all times relevant to this action, Plaintiff ROBERT STOLARIK was a resident of Kings County, New York.

7.     Defendant CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers. Defendant

CITY OF NEW YORK was at all times relevant herein the public employer of Defendant NYPD Police Officer MICHAEL ACKERMANN, Defendant NYPD Police Officer REBECCA GUZMAN, Defendant NYPD Lieutenant WILBERT MORALES, Defendant LIEUTENANT EUGENE WHYTE, and Defendant NYPD ASSISTANT CHIEF KIM ROYSTER.

8. Defendants ACKERMANN, GUZMAN, MORALES, WHYTE, and ROYSTER were at all times relevant herein duly appointed and acting officers, servants, employees and agents of the New York City Police Department, a municipal agency of Defendant CITY OF NEW YORK. At all times relevant herein, the individual defendants were acting under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of New York and the New York City Police Department, in the course and scope of their duties and functions as officers, agents, servants, and employees of Defendant CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by the CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. They are sued individually and in their official capacities.

9. By the conduct, acts, and omissions complained of herein, Defendants ACKERMANN, GUZMAN, MORALES, WHYTE, and ROYSTER violated clearly established constitutional standards under the Fourth and Fourteenth Amendments to the United States Constitution of which a reasonable police officer under the circumstances would have known.

## STATEMENT OF FACTS

10.  Plaintiff Robert J. Stolarik, who is 46 years old, is an accomplished freelance photographer. Plaintiff has worked regularly as a photojournalist for the New York Times since 2000.

11.  On August 4, 2012, Plaintiff was on assignment for the New York Times with two reporters who were conducting street interviews in the Concourse neighborhood of the Bronx.

12.  Plaintiff was taking photographs of a brewing street fight at McClennan Street and Sheridan Avenue when, at approximately 10:30 p.m., Defendant ACKERMANN of the New York City Police Department's 44th Precinct arrived on the scene and arrested a teenage girl.

13.  Plaintiff was then instructed by Defendant GUZMAN to stop taking photographs. In response, Plaintiff identified himself as a photojournalist for the New York Times and continued taking photographs.

14.  Defendant ACKERMANN then approached Plaintiff and aggressively pushed the camera into Plaintiff's face. When Plaintiff repeatedly asked for the officers' badge numbers, Defendants GUZMAN and MORALES grabbed Plaintiff's camera and Defendant ACKERMANN dragged Plaintiff to the ground. While on the ground, Plaintiff was surrounded by up to six police officers. The Officers, including Defendants ACKERMANN and MORALES, dragged, kicked, and stomped on Plaintiff while he was on the ground. As a result, Plaintiff sustained scrapes and bruises to his arms, legs, and face.

15.  Defendant ACKERMANN then placed Plaintiff under arrest and transported him to the 44th Precinct station. Despite their knowledge of the absence of probable cause to arrest

Plaintiff, Defendants GUZMAN and MORALES failed to intervene to prevent Plaintiff's wrongful arrest. Plaintiff was held at the Precinct until 4:40 a.m. the next morning.

16. In order to justify his baseless arrest of Plaintiff, Defendant ACKERMANN fabricated the circumstances underlying the arrest. In the criminal complaint filed against Plaintiff on October 19, 2012, Defendant ACKERMANN falsely claimed that Plaintiff interfered with his arrest of the teenage girl by repeatedly discharging his camera's flash in his face, which he claimed blinded him and prevented him from performing his duties. Plaintiff was charged with Resisting Arrest under P.L. 205.30, Obstructing Governmental Administration under P.L. 195.05, Disorderly Conduct under P.L. 240.20, and Harassment under P.L. 240.26(1).

17. Plaintiff was arraigned on November 26, 2012, and released on his own recognizance.

18. At the time of Plaintiff's arrest, his camera equipment and press credential were confiscated. As a result, Plaintiff was unable to work. On August 10, 2012, Plaintiff's camera equipment was returned to him, but his press credential was not.

19. Over the next several years, New York City policymakers would engage in a pattern of retaliation against Plaintiff by issuing him press credentials with short expiration dates and by downgrading his press credential, resulting in Plaintiff receiving a reduction in work assignments and therefore reduced pay.

20. On August 23, 2012, Plaintiff's press credential was returned to him. However, he was issued a press credential with a different expiration date. The credential that had been taken from him expired on January 15, 2013, and the credential returned to him expired on November 30, 2012.  Each new credential issued to plaintiff expired on his next scheduled court date.  The New York City official with the policymaking authority to issue press credentials, Defendant

ROYSTER[1], claimed that this procedure was followed as a result of the pending criminal charges against Plaintiff, and later, as a result of the ongoing IAB investigation.

21. Prior to the charges against Plaintiff being dismissed, his press credential expired four times. Each time, Plaintiff had to consult attorneys to obtain his new credential before the old credential expired. As a result of the ongoing retaliation by the NYPD, the Times gave Plaintiff fewer assignments, in order to ensure that the assigned photographer could gain access to the scene.

22. Pursuant to the relevant law governing the issuance of press credentials, Title 38, §11 of the Rules of the City of New York, there is no rule stating that the existence of pending criminal charges permits the NYPD to refuse to issue a press credential. Moreover, the NYPD violated the Rules by failing to provide Plaintiff with a hearing under §11-11(c).

23. Following January 15, 2013, the NYPD issued Plaintiff an "Independent" as opposed to a "New York Times" press credential, despite the fact that Plaintiff has had a New York Times press credential for more than 10 years.

24. As an "Independent" press credential holder, Plaintiff loses credibility on the job. This prevents Plaintiff from effectively performing his work, and as a result, Plaintiff's assignments from the New York Times have decreased dramatically.

25. Plaintiff still does not have a "New York Times" press credential, even though the New York Times has written to the NYPD requesting that he be given one.

26. An internal police department investigation of this incident found that there was no flash attached to Plaintiff's camera at the time of the incident. The investigation further found that Plaintiff's camera could not discharge a flash without an attachment. Photographs taken at

---

[1] Royster has since been promoted to Assistant Chief.

the scene also revealed that no flash was used and no other witnesses reported seeing Plaintiff's camera discharge a flash.

27.     As a result of the police department's findings, all criminal charges against Plaintiff stemming from this incident were dismissed in or about April 2013.

28.     On August 21, 2013, a Bronx grand jury indicted Defendant ACKERMANN for wrongfully arresting Plaintiff. Defendant ACKERMANN was charged with Falsifying Business Records in the First and Second Degrees under P.L 175.10 and P.L. 175.05, Tampering with Public Records in the First and Second Degrees under P.L. 175.25 and P.L. 175.20, Offering a False Instrument for Filing in the First and Second Degrees under P.L. 175.35 and P.L. 175.30, Official Misconduct under P.L. 195.00, and Making a Punishable False Written Statement under P.L. 210.45.

29.     Defendant ACKERMANN was arraigned on August 26, 2013 and released on his own recognizance. He faces a maximum of 7 years imprisonment if convicted of the most serious charge, Tampering with Public Records in the First Degree, which is a Class D felony.

30.     As of the date of the initial Complaint, Defendant ACKERMANN remained at liberty and a trial date had not been set.

31.     Even after the dismissal of criminal charges against Plaintiff in or around April 2013, a New York City policymaker, namely Defendant WHYTE, retaliated against Plaintiff by singling him out at a crime scene and ordering him to leave, thereby preventing him from doing his job.

32.      On Friday, May 16, 2014, Defendant WHYTE interfered with Plaintiff's work at an Upper East Side location where a robbery suspect had been shot and killed.  Even though Plaintiff was not in an area designated "off-limits," and despite the fact that members of the

7

public and other members of the media were permitted to stay, Defendant WHYTE ordered Plaintiff to stop taking photographs and to leave the location. This incident was captured in a video recorded by Plaintiff. See, Exhibit A: New York Times Letter dated May 21, 2014.

33. Defendant WHYTE has final policymaking authority and his actions on May 16, 2014 may fairly be said to represent official policy.

34. As a result of the retaliatory actions of Defendants ROYSTER and WHYTE, Plaintiff has been prevented from performing his job. In light of this, Plaintiff's assignments from the New York Times have decreased by seventy-five percent. In 2012, Plaintiff had 257 assignments from the New York Times. In 2015, that number has decreased to 68.

## CAUSES OF ACTION

### FIRST CLAIM: FALSE ARREST

**DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983**

35. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

36. The conduct and actions of Defendants ACKERMANN, GUZMAN, and MORALES on August 4, 2012, acting under color of law, in arresting and detaining or causing the arrest and detention of Plaintiff without probable cause was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts and was done without lawful justification or reason in violation of Plaintiff's constitutional rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution.

37. Defendants ACKERMANN, GUZMAN, and MORALES are liable for ordering and/or directly participating in the acts described herein and for failing to intervene to protect Plaintiff from the unconstitutional conduct of their fellow officers.

38. As a direct and proximate cause of the foregoing, Plaintiff was deprived of his liberty, was subjected to physical and emotional pain and suffering, and was otherwise damaged and injured.

## SECOND CLAIM: MALICIOUS PROSECUTION

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

39. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

40. Defendants ACKERMANN, GUZMAN, and MORALES, with malice, and knowing that probable cause did not exist to arrest and prosecute Plaintiff, acting individually and in concert, caused Plaintiff to be arrested, charged, and prosecuted, thereby violating Plaintiff's clearly established right, under the Fourth and Fourteenth Amendments to the United States Constitution, to be free from unreasonable searches and seizures.

41. Specifically, Defendants ACKERMANN, GUZMAN, and MORALES, with malice, knew or in the absence of their deliberate and reckless indifference to the truth, should have known that probable cause did not exist to arrest and prosecute Plaintiff because the essence of the charges against Plaintiff involved Plaintiff possessing and using a flash to disrupt their arrest of a teenage girl. It is now an undisputed fact that Plaintiff neither used nor possessed a flash for his camera on the night in question. Defendants ACKERMANN, GUZMAN, and MORALES knew that there was absolutely no basis for Plaintiff's arrest and prosecution, but

9

either took actions to continue Plaintiff's wrongful arrest and prosecution, or failed to take actions to prevent Plaintiff's wrongful arrest and prosecution.

42. Defendant ACKERMANN, acting with malice, knowingly and intentionally falsified statements of fact in the criminal complaint filed against Plaintiff, statements Defendant ACKERMANN knew were false but swore were truthful, providing the factual basis for the wrongful criminal charges filed against Plaintiff. These actions directly resulted in the continuance of Plaintiff's malicious prosecution. Defendant ACKERMANN's fabrication of a series of events in order to justify the wrongful arrest of Plaintiff violated Plaintiff's clearly established constitutional rights.

43. Defendants ACKERMANN, GUZMAN, and MORALES performed the above-described acts with malice, under color of state law, deliberately, intentionally, or with reckless disregard for the truth and for Plaintiff's constitutional rights. No reasonable officer would have believed this conduct was lawful.

44. As a direct and proximate result of the actions of Defendants ACKERMANN, GUZMAN, and MORALES, Plaintiff was maliciously prosecuted until the date of the dismissal of the charges against Plaintiff in April 2013. As a direct result of his malicious prosecution, Plaintiff suffered loss of employment, loss of his usual work assignments, was subjected to emotional pain and suffering, and was otherwise damaged and injured.

### THIRD CLAIM: PUNITIVE DAMAGES
### AGAINST DEFENDANT OFFICER MICHAEL ACKERMANN, In His Official and Individual Capacity

45. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

46. Defendant ACKERMANN, In His Official and Individual Capacity, was indifferent to Plaintiff's constitutional rights in that ACKERMANN wantonly and maliciously fabricated the basis for Plaintiff's wrongful arrest and made false statements under oath which served as the basis for the wrongful criminal complaint filed against Plaintiff.

47. Punitive damages are warranted against Defendant ACKERMANN for his wanton and malicious conduct toward Plaintiff.

### FOURTH CLAIM:  MUNICIPAL LIABILITY

### LIABILITY OF DEFENDANT CITY OF NEW YORK FOR CONSTITUTIONAL VIOLATIONS

48. Plaintiff incorporates by reference the allegations set forth in each and every preceding paragraph as if fully set forth herein.

49. The CITY OF NEW YORK directly caused the constitutional violations suffered by Plaintiff, and is liable for the damages suffered by Plaintiff as a result of the conduct of the defendant officers. The conduct of the defendant officers was a direct consequence of policies and practices of Defendant CITY OF NEW YORK.

50. Upon information and belief, at all times relevant to this complaint, Defendant CITY OF NEW YORK, acting through its police department, had *de facto* policies, practices, customs and usages that condoned and fostered the unconstitutional conduct of the individual defendants, and were a direct and proximate cause of the damages and injuries complained of herein.

51. These policies, practices, customs, and usages, include *inter alia*, failing to properly train, supervise and discipline its police officers, including the defendant officers, and

failing to adequately investigate citizen complaints of police misconduct, thereby failing to adequately discourage further constitutional violations on the part of its police officers. Instead, acts of police misconduct were tolerated by the CITY OF NEW YORK, and the City did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

52. At all relevant times herein, Defendant CITY OF NEW YORK, acting through the NYPD had *de facto* policies, practices, customs and usages of encouraging and/or tacitly sanctioning the violation of the constitutional rights of journalists, specifically photojournalists, to intimidate them and prevent them from photographing the conduct and potential misconduct of on-duty NYPD police officers.

53. More specifically, the CITY OF NEW YORK, acting through the NYPD, had a policy and practice of failing to properly train its employees and police officers as to the lawfulness of journalists taking photographs of NYPD police officers while conducting their official duties, thereby allowing the arrest and detention of persons whose conduct was entirely legal.

54. The CITY OF NEW YORK knew or should have known of the defendant officers' propensity to engage in this type of misconduct. Prior to August 4, 2012, the CITY OF NEW YORK was aware of numerous complaints of police misconduct involving the wrongful arrests of journalists and photojournalists by the NYPD, especially during the Occupy Wall Street protests that began the previous year. Despite its knowledge of such incidents of prior misconduct, the CITY OF NEW YORK failed to take remedial action.

55. The wrongful policies, practices, customs and/or usages complained of herein demonstrated a deliberate indifference on the part of the policymakers of the CITY OF NEW

YORK to the constitutional rights of persons within the city, and were the direct and proximate cause of the violations of Plaintiff's rights alleged herein.

56. As a result of the foregoing, Plaintiff was deprived of his liberty, suffered loss of employment and loss of his usual work assignments, was subjected to emotional pain and suffering, and was otherwise damaged and injured.

## FIFTH CLAIM: MUNICIPAL LIABILITY

### LIABILITY OF DEFENDANT CITY OF NEW YORK FOR VIOLATIONS OF PLAINTIFF'S FIRST AMENDMENT RIGHTS

57. Plaintiff incorporates by reference the allegations set forth in each and every preceding paragraph as if fully set forth herein.

58. Defendant CITY OF NEW YORK is liable for the unconstitutional actions of Defendant ROYSTER and Defendant WHYTE, whose actions as New York City policymakers violated Plaintiff's First Amendment rights.

59. Defendant ROYSTER, who had final policymaking power in the area of issuing press credentials, deprived Plaintiff of his First Amendment right to engage in news coverage. Defendant ROYSTER had no basis for depriving Plaintiff of his 2-year credential or of his "New York Times" credential status. Defendant ROYSTER's unconstitutional actions were caused solely by Plaintiff's exercise of his First Amendment rights.

60. Defendant WHYTE, who had final policymaking power in allowing members of the press entry to the crime scene, violated Plaintiff's First Amendment right to engage in news coverage when he singled out Plaintiff and prevented him from performing his job on May 16, 2014. Defendant CITY OF NEW YORK is liable for Defendant WHYTE's single unconstitutional action as a New York City policymaker.

61. As a result of Defendants ROYSTER and WHYTE's violations of Plaintiff's First Amendment rights, Plaintiff has suffered financially, losing more than seventy-five percent of his work assignments.

**WHEREFORE**, Plaintiff demands the following relief against Defendants ACKERMANN, GUZMAN, MORALES, ROYSTER, WHITE, and THE CITY OF NEW YORK:

    a. Compensatory damages in favor of Plaintiff in an amount to be determined by a jury;

    b. Punitive damages in favor of Plaintiff in an amount to be determined by a jury;

    c. The convening and empanelling of a jury to consider the merits of the claims herein;

    d. Costs and interest and attorney's fees;

    e. Such other and further relief as this Court may deem just and proper.

Dated:   New York, New York
November 24, 2015

        _____s/_____
LEAH M. BUSBY [LB-5589]
RONALD L. KUBY [RK-1879]
Law Office of Ronald L. Kuby
119 West 23rd Street, Suite 900
New York, New York 10011
Email: lbusby@kubylaw.com
(212) 529-0223 (t)
(212) 529-0644 (f)

Attorneys for Plaintiff